**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

AMANDA S.,

                   Plaintiff,

      v.                              3:21-CV-240
                                       (DJS)

KILOLO KIJAKAZI,
_Acting Commissioner of Social Security_,

                   Defendant.
_____

**APPEARANCES:**                **OF COUNSEL:**

LACHMAN, GORTON LAW FIRM    PETER A. GORTON, ESQ.
Attorney for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.    TIMOTHY S. BOLEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for purposes of disability insurance benefits.  Dkt. No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 14 & 15.  Plaintiff has also filed a Reply.  Dkt. No. 18, Reply.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion is granted.  The Commissioner's decision is affirmed.

## I. RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1988.  Dkt. No. 10, Admin. Tr. ("Tr."), p. 379.  Plaintiff reported that she did not finish high school but received her GED.  Tr. at p. 380.  She has past work experience as a dietary aide and in a nursing and rehab facility.  Tr. at p. 422.  Plaintiff alleges disability due to bipolar disorder, depression, anxiety, gastroparesis, migraines, and neuropathy.  Tr. at pp. 411-412.

### B.  Procedural History

Plaintiff applied for disability and disability insurance benefits in March 2018. Tr. at p. 411.  She alleged a disability onset date of March 8, 2018.  *Id.*  Plaintiff's

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 5 & General Order 18.

application was initially denied on June 20, 2018, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 426-430, 438.  A hearing was conducted before ALJ Laureen Penn on October 22, 2019, at which Plaintiff and a vocational expert testified.  Tr. at pp. 374-410.  The ALJ issued a written decision on January 14, 2020, finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 20-34.  On January 11, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-6.

## C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 21, 2018, the application date.  Tr. at p. 22.  Second, the ALJ found that Plaintiff had the following severe impairments: obesity, other idiopathic peripheral autonomic neuropathy, restless leg syndrome, gastroparesis, bipolar II disorder, post-traumatic stress disorder, generalized anxiety disorder, personality disorder, and mood disorder.  Tr. at p. 22.  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at pp. 24-26.  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except:

3

> [S]he can lift and carry 20 pounds occasionally, 10 pounds frequently. She can stand and walk for 6 hours and can sit for 6 hours and can frequently climb ramps and stairs, stoop, crouch, kneel, and crawl. She cannot climb ladders, ropes, or scaffolds. She cannot have concentrated exposure to extreme cold and vibration. She is capable of performing simple, routine, repetitive work, in an environment with occasional workplace changes. She can frequently interact with supervisors, coworkers, and the public.

Tr. at p. 26.

Fifth, the ALJ found that Plaintiff had no past relevant work. Tr. at p. 32. Sixth, the ALJ found that Plaintiff was categorized as a "younger individual" on the date last insured. *Id.* Seventh, the ALJ found that there was work existing in significant numbers in the national economy that Plaintiff could perform. Tr. at pp. 33-34. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at p. 34.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of

the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff's Memorandum of Law presents a number of issues for the Court's review, all of which are ultimately grounded in a claim that the ALJ's decision was not supported by substantial evidence. Dkt. No. 14, Pl.'s Mem. of Law. Plaintiff asserts that the ALJ erred in the assessment of her mental RFC, her physical RFC, and in the determination at step five of the sequential analysis. Pl.'s Mem. of Law at pp. 9-23. Plaintiff also argues that the ALJ improperly refused to hear witness testimony, and that the Appeals Council improperly refused to consider new evidence. *Id.* at pp. 23-25. In response, Defendant asserts that the ALJ's conclusions were supported by substantial evidence, and that Plaintiff has failed to demonstrate any prejudicial error resulting from the Appeals Council's refusal to consider additional evidence. Dkt. No. 15, Def.'s Mem. of Law at pp. 5-23.

### A. Assessment of Plaintiff's Mental RFC

#### 1. *The ALJ's Reliance on the Opinion of Consultative Examiner Dr. Moore*

Plaintiff asserts that the ALJ erred by relying on the opinions of a consultative examiner and an agency doctor, rather than that of a treating source. Pl.'s Mem. of Law at pp. 9-19. She does not, however, point to any specific legal error, but instead alleges that given the presence of mental health impairments, it was improper for the ALJ to rely on the opinion of a one-time examiner. Pl.'s Mem. of Law at pp. 9-14. Mary Ann Moore, Psy.D., completed a consultative examination of Plaintiff on June 7, 2018. Tr. at p. 666. The ALJ found Dr. Moore's opinion persuasive, indicating that her findings

were generally supported by the results of her examination and were consistent with the overall record.  Tr. at p. 31.  While the Court is certainly mindful that in the mental health context, it may sometimes be problematic for an ALJ to rely on the opinion of a consultative/one-time examiner, these opinions can nevertheless constitute substantial evidence upon which a decision may be affirmed.  *See Benitez v. Comm'r of Soc. Sec.*, 2021 WL 4239244, at \*15 (S.D.N.Y. Sept. 17, 2021) ("Although the Second Circuit has cautioned that ALJs should not rely heavily on the findings of consultative physicians that arose from a single examination, *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990), a consultative physician's opinion may nonetheless constitute substantial evidence, *see Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (affirming ALJ reliance on findings of two consultative examiners in declining to afford treating physicians controlling weight).").  Moreover, an ALJ's determination is supported by substantial evidence where, as here, she relied upon both the state agency consultant and consultative examiner's opinions as well as Plaintiff's mental status examination findings.  *Dana Marie M. v. Comm'r of Soc. Sec.*, 2022 WL 2314560, at \*8 (N.D.N.Y. June 28, 2022); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The ALJ here cited to Plaintiff's "largely benign" mental status examinations in addition to the consultative and state agency consultant opinions.  Tr. at p. 31.  To that

end, Plaintiff also challenges what she views as the ALJ's reliance on a single, "cherry-picked" mental status examination in support of her determination.  Pl.'s Mem. of Law at p. 13.  Cherry picking "refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source."  *Dowling v. Comm'r of Soc. Sec.*, 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015).  A review of the record, however, demonstrates that rather than cherry-picking a single, non-representative normal mental status exam, the record contained a number of normal mental status exams.  *See* Tr. at pp. 144, 149, 154, 159, 164, 169.  Rather than ignoring conflicting evidence, the ALJ explicitly acknowledged the existence of some abnormal findings, noting "at times, mental status examinations reveal some abnormalities such as poor eye contact, anxiousness, impaired memory, impaired attention, and impaired concentration."  Tr. at p. 29.  Ultimately, however, the ALJ determined that additional mental restrictions were not supported by the record.  *Id.*

Plaintiff argues next that the ALJ's reliance on the opinion of Dr. Moore was problematic because the consultative examination took place at a time when her mental health symptoms were well-controlled, but that her condition subsequently deteriorated.  Pl.'s Mem. of Law at pp. 9-10.  As a result, Plaintiff argues that Dr. Moore's one-time evaluation "did not give a proper longitudinal assessment" which the ALJ "simply does not consider and which undermines her reliance on Dr. Moore."  Pl.'s Mem. of Law at p. 10.  Plaintiff points to treatment notes from September of 2018 and January 2019 as evidence of her worsening condition.  *Id.*  However, a review of those treatment notes

demonstrates that Plaintiff's condition appeared to worsen after she requested to decrease her medication dosage. For example, treatment notes indicate that in June 2018, Plaintiff requested to decrease her dose of Depakote, Tr. at p. 138, and requested the same in August of 2018. Tr. at p. 143. By September, Plaintiff reported feeling slightly more irritable, and her doctor noted that the dose had gone down at her request. Tr. at p. 148. Subsequent notes indicate that her mood was slightly less irritable with 500 mg, but Plaintiff had felt that adding 125 mg was "too much" and so she had stopped taking the extra dosage which had been prescribed. Tr. at p. 153. By November, Plaintiff reported that her mood had improved. Tr. at p. 158. In December, her mood was "fair" with "less irritability." Tr. at p. 163. In March 2019, Plaintiff reported a depressed mood, and her provider noted that she had missed her appointments in the last three months. Tr. at p. 168. Despite the depressed mood, Plaintiff reported less mood fluctuation and less irritability. *Id.*

Plaintiff alleges that the ALJ erred in considering the "consistency factor" because "[w]ith exception of one errant citation to a treatment record, the ALJ's analysis is vague, conclusory, and not supported by reference to the medical records." Pl.'s Mem. of Law at p. 11. Plaintiff is correct that in the paragraph discussing supportability and consistency of Dr. Moore's opinion specifically, the ALJ did reference only one treatment note. Tr. at p. 31. However, the Court notes that the ALJ engaged in a thorough discussion of the record evidence in the preceding pages. *See* Tr. at pp. 29-30. In doing so, the ALJ acknowledged that "the record is significant for ongoing treatment

related to mental health issues" and that Plaintiff "regularly reported or was observed to display behavior and temperament consistent with these diagnoses including: difficulty sleeping, sadness, crying spells, hopelessness, loss of energy, feelings of worthlessness, diminished self-esteem, diminished sense of pleasure, irritability, and social withdrawal. (4F/3)." Tr. at p. 29. The ALJ also noted that "at times, mental status examinations reveal some abnormalities such as poor eye contact, anxiousness, impaired memory, impaired attention, and impaired concentration. (4F/4)." *Id.* However, the ALJ noted that "[m]ental status examinations have been largely normal, treatment has been very sparse, and her activities of daily living suggest greater functional abilities than alleged." *Id.* She went on to cite to May 2018 treatment notes that indicated Plaintiff "was doing well," and that her mood was stable, she was less irritable, her anxiety was less of a problem, and her sleep was improved. Tr. at p. 29. The ALJ's "explanation must be viewed against the backdrop of the discussion of the treating records that preceded it." *Jeanette J. v. Saul*, 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020). It is therefore "proper to read the ALJ's decision as a whole" to avoid the "needless formality to have the ALJ repeat substantially similar factual analyses." *Id.*

Based on the foregoing, the Court finds that the ALJ's consideration of Dr. Moore's opinion was without legal error and was supported by substantial evidence. To the extent that Plaintiff disagrees with how the ALJ weighed the evidence, it is not the proper role of this Court to reweigh that evidence. *Shyla D. v. Kijakazi*, 2022 WL 798158, at *3 (N.D.N.Y. Mar. 16, 2022) (collecting cases)). Where, as here, "the ALJ's

conclusions find reasonable support in the record, courts 'will defer to the ALJ's resolution' regarding the appropriate weight to be afforded to various medical opinions." *Id.* (quoting *Teresa L. v. Comm'r of Soc. Sec.*, 2020 WL 6875254, at *7 (W.D.N.Y. Nov. 23, 2020).  Accordingly, the ALJ's reliance on the opinion of consultative examiner Dr. Moore does not provide a basis for remand.

    *2. The ALJ's Reliance on the Opinion of State Agency Consultant Dr. Nobel*

    Plaintiff similarly argues that the ALJ erred in relying on the opinion of R. Nobel, Ph.D., a non-examining psychiatric consultant.  Pl.'s Mem. of Law at pp. 14-19.  The ALJ found Dr. Nobel's opinion persuasive.  Tr. at p. 31.  Plaintiff takes issue with "[Dr.] Nobel's conclusion that Plaintiff can perform 'unskilled' work" because it "is not a valid functional assessment on which the ALJ could rely and cannot substitute substantial support for the RFC."  Pl.'s Mem. of Law at p. 15.  Plaintiff argues that Dr. Nobel has "directly violat[ed]" the POMS guidelines, Pl.'s Mem. of Law at pp. 15-16, and therefore the ALJ erred "in concluding that Nobel has expertise in the Social Security program."  *Id.* at p. 16, n.4.  As an initial matter, the Court notes that while the SSA's policies established in the POMS may provide helpful guidance, the provisions "have no legal force, and they do not bind the Commissioner."  *Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999) (quoting *Schweiker v. Hansen*, 450 U.S. 785, 789) (cleaned up)). Nor do the POMS guidelines create any judicially-enforceable rights.  *Sassower v. Berryhill*, 2018 WL 7968910, at *4 n.5 (S.D.N.Y. Dec. 13, 2018) (collecting cases).

However, Plaintiff's argument also fails because, as Defendant correctly identifies, Plaintiff has misstated Dr. Nobel's conclusion.  Def.'s Mem. of Law at pp. 10-11.  Dr. Nobel's opinion actually states that Plaintiff is "capable of performing *the basic mental demands* of unskilled work."  Tr. at p. 421 (emphasis added).  The Social Security regulations explain that the basic mental abilities and aptitudes required to do most jobs include the ability to understand, carry out, and remember simple instructions, to use judgment, to respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting.  20 C.F.R. § 416.922(b)(3)-(6).  Accordingly, Dr. Nobel's statement appears to indicate only that Plaintiff was generally capable of meeting these mental requirements, and not whether she was ultimately capable of work.

Plaintiff goes on to claim that the ALJ erred in relying on Dr. Nobel's "Section I findings of various 'moderate' limitations."  Pl.'s Mem. of Law at p. 16.  The ALJ noted that Dr. Nobel indicated the presence of "moderate limitations with understanding, remembering and applying information, moderate limitations interacting with others, moderate problems with concentration, persistence or pace, and mild difficulties adapting and managing herself."  Tr. at p. 31.  Plaintiff's argument appears to presume that the ALJ improperly relied upon Dr. Nobel's summary conclusions in Section I, without looking to the "narrative explanation in Section III."  Pl.'s Mem. of Law at p. 16.  All of these summary limitations, however, were identified and discussed in more detail in the Section III Mental Residual Functional Capacity Assessment.  Tr. at pp.

13

419-421.  For example, Dr. Nobel found that Plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions, Tr. at p. 419, or to carry out those instructions.  Tr. at p. 420.  Similarly, Dr. Nobel opined that Plaintiff's ability to make simple work-related decisions was not significantly limited. Tr. at p. 420.  Her ability to accept instructions and respond appropriately to criticisms from supervisors and to get along with coworkers was described as "moderately limited," as was her ability to respond appropriately to changes in the work setting.  Tr. at pp. 420-421.

Plaintiff asserts that the use of the word "moderate" renders Dr. Nobel's opinion impermissibly vague.  Pl.'s Mem. of Law at p. 16.  The regulations explain, however, that a moderate limitation indicates that a plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. § 404, Subpt. P, App. 1, 12.00 (F)(2)(c).  In the section labeled "MRFC – Additional Explanation," Dr. Nobel identified evidence in support of these conclusions, including Dr. Moore's findings at the consultative exam, and Plaintiff's self-reported activities and symptoms.  Tr. at p. 421.  "The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."  *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012).  As a result, the Court can discern no error on this basis.

### 3. The ALJ's Consideration of Plaintiff's Self-Reports

Plaintiff alleges that the ALJ improperly focused on her mental status exams without considering her self-reports, in essence, improperly requiring objective evidence of mental health symptoms.  Pl.'s Mem. of Law at pp. 18-19.  The ALJ, however, specifically referenced Plaintiff's self-reports, stating that Plaintiff "endorsed that she has difficulty grasping thoughts or things that are said to her," and that she "testified that she experiences irritability."  Tr. at p. 25.  The ALJ also noted Plaintiff's statements that she "sometimes" has a problem paying attention, and her testimony that she "experiences sadness, irritability, excessive sleep, and crying."  *Id.*  ALJ Penn went on to describe various pieces of record evidence that she found to be inconsistent with the degree of limitations Plaintiff described, such as observations by providers that Plaintiff was pleasant and cooperative, and a consultative examination finding that her cognitive functioning was average.  *Id.*

It is clear from this analysis that the ALJ did in fact consider Plaintiff's self-reports, and that Plaintiff simply disagrees with how the ALJ determined her credibility.  "An ALJ's credibility finding is entitled to substantial deference by a reviewing court." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 645 (S.D.N.Y. 2019).  "[C]ourts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying."  *Id.* (quoting *Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013)).  "Thus, a court may not 'second-guess' the ALJ's credibility finding 'where the ALJ identified

specific record-based reasons for [her] ruling,' *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010), and where her determination is supported by substantial evidence." *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013)).   The ALJ here has identified specific record-based reasons for finding Plaintiff's self-reports less credible, such as her own statements that she is able to finish what she starts and follow instructions, and her ability to recall in detail her medical history and medical providers at the hearing.   Tr. at p. 25.   Accordingly, this Court will not second-guess that determination.

The ALJ is "required to take the [plaintiff's] reports of pain and other limitations into account" when determining the RFC, but "is not required to accept the [plaintiff's] subjective complaints without question." *Rivas v. Berryhill*, 2018 WL 4666076, at *13 (S.D.N.Y. Sept. 27, 2018) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). Rather, an ALJ is entitled to "exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Id.*  Where, as here, the ALJ's decision to discredit a plaintiff's subjective complaints is supported by substantial evidence, this Court must defer to her findings.  *Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009).

### 4. The ALJ's Assessment of Plaintiff's Social Limitations

Plaintiff argues that the ALJ improperly determined that she could "frequently" interact with others in the workplace.  Pl.'s Mem. of Law at pp. 19-21.  She asserts that

the ALJ improperly based this assessment on an impermissible interpretation of the bare medical evidence, without the support of a medical opinion. *Id.*

"[T]he assessed RFC need not 'perfectly correspond with any of the opinions of medical sources cited in [the] decision.'" *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 400 (W.D.N.Y. 2018) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).   Dr. Nobel opined that Plaintiff would have no significant limitations in her ability to interact with the general public, and moderate limitations in her ability to interact with supervisors and coworkers.   Tr. at p. 420.   Dr. Moore similarly opined that Plaintiff would have a moderate limitation in her ability to interact adequately with supervisors, coworkers, and the public.   Tr. at p. 669.   The ALJ found both opinions persuasive.   Tr. at p. 31.   As a result, the ALJ's finding that Plaintiff would have a moderate limitation in her ability to interact with others at step three, Tr. at p. 25, is clearly not the result of an impermissible interpretation of bare medical evidence. Although the RFC did not include a limitation specific to this function, an ALJ is under no obligation "to adopt, wholesale, every limitation [in a medical opinion] into the RFC determination." *Rackard v. Saul*, 2020 WL 5250512, at *2 (W.D.N.Y. Sept. 3, 2020) (quoting *McIntosh v. Berryhill*, 2018 WL 4376417, at *24 (S.D.N.Y. July 16, 2018), *report and recommendation adopted*, 2018 WL 4374001 (S.D.N.Y. Sept. 12, 2018)). Remand is appropriate only where the Court is "unable to discern" the ALJ's reasoning for omitting limitations, "*and* where 'their inclusion in [p]laintiff's RFC might have resulted in a different outcome.'" *Id.* (emphasis in original).

17

Here, even assuming that the ALJ's RFC determination permitting "frequent" interaction with supervisors, coworkers, and the public failed to account for Plaintiff's "moderate" limitations in social interaction, that error would not have resulted in a different outcome and was therefore harmless. The RFC limited Plaintiff to "simple, routine, repetitive work," in an environment with only "occasional workplace changes." Tr. at p. 26. The vocational expert identified four unskilled jobs that an individual with Plaintiff's RFC could perform: cafeteria attendant, housekeeper, price marker, and routing clerk. Tr. at p. 407. "The Second Circuit has repeatedly held that 'moderate' limitations do not preclude an individual's ability to perform unskilled work." *Rivas v. Berryhill*, 2018 WL 4666076, at *15 (S.D.N.Y. Sept. 27, 2018) (collecting cases). The VE also testified that even if a person were limited to only occasional interaction with supervisors, coworkers, and the public, they could still perform those jobs. Tr. at p. 407. Accordingly, this argument does not provide a basis for remand. *Rackard v. Saul*, 2020 WL 5250512, at *2.

### 5. Plaintiff's Ability to Meet On-task and Attendance Requirements

Plaintiff asserts that the ALJ improperly determined that she could meet the on-task and attendance demands of work. Pl.'s Mem. of Law at pp. 22-23. She also claims that the ALJ failed to consider all of the record evidence in combination. *Id.* In support of this assertion, Plaintiff points to the opinion of Carlie Long, FNP, Tr. at pp. 724-727, who opined that she would be off-task more than 33% of the day and absent four or more days per month. *Id.* However, as Plaintiff acknowledges, the ALJ found the

18

opinion of NP Long "unpersuasive" because the limitations were unsupported by any explanation or evidence and were inconsistent with the overall record. Tr. at p. 32.

Both Dr. Nobel and Dr. Moore, whose opinions the ALJ did find persuasive, opined that Plaintiff would have, at most, moderate limitations in sustained concentration and persistence.[2]   Tr. at pp. 420, 669.   Moderate limitations in concentration, persistence, and pace can be accommodated by a limitation to unskilled work and simple, routine tasks. *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014). Although Plaintiff has pointed to evidence of symptoms that she believes demonstrate a more serious impairment in her ability to remain on-task and attend work, such as headaches, fatigue, epigastric pain, foot pain, and IBS symptoms, Pl.'s Mem. of Law at p. 23, it is not the proper role of this Court to reweigh evidence. *David W. v. Comm'r of Soc. Sec.*, 2018 WL 6088095, at *6 (N.D.N.Y. Nov. 20, 2018) (collecting cases). Moreover, the ALJ specifically addressed all of these issues at steps two and three of the analysis. Tr. at pp. 22-26.  It is clear from both the ALJ's discussion and from her explicit statements that she considered "all symptoms" and the "record as a whole" that the proper consideration was given. Tr. at pp. 26, 32.  Accordingly, this contention fails to demonstrate any error necessitating remand. *See Frank B. v. Saul*, 2020 WL 4596867, at *2 (N.D.N.Y. Aug. 11, 2020) (citing *Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017)).

---

[2] This category of mental functioning "refers to the abilities to focus attention on work activities and stay on task at a sustained rate," and includes the areas of attendance and attention/concentration.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(E)(3).

### B. The ALJ's Assessment of Plaintiff's Physical RFC

Plaintiff argues that the ALJ's conclusion that she is capable of standing or walking six hours per day and lifting up to twenty pounds is not supported by substantial evidence.  Pl.'s Mem. of Law at pp. 21-22.  Plaintiff indicates that she is unable to stand or walk for six hours per day because "both of her feet [are] really sore and she has numbness and tingling of the feet."  *Id.* at p. 21.  The ALJ acknowledged evidence in the record that Plaintiff sought treatment from her primary care physician for complaints of neuropathy in her feet but noted that the same records showed that Plaintiff's neurologist believed her symptoms were the result of restless leg syndrome instead.  Tr. at pp. 28, 741.  The ALJ also noted that a neurological examination was normal and Plaintiff's sensation was found to be intact.  Tr. at pp. 28, 743.  In May 2018, Plaintiff had "some decreased sensation in her lower extremities" but "her gait was steady and normal."  Tr. at pp. 28, 680.  At a consultative examination in June 2018, Plaintiff's gait was also observed to be normal and she was able to walk on her heels and toes without difficulty.  Tr. at p. 673.  Accordingly, consultative examiner Dr. Jenouri found no physical limitations related to Plaintiff's ability to stand or walk.  Tr. at p. 674.  The ALJ noted that despite Plaintiff's complaints of neuropathy, she was able to engage in daily activities that suggested a greater level of functioning, such as doing yardwork, cleaning, and grocery shopping.  Tr. at p. 28.  Evidence also showed improvement of these symptoms with medication.  Tr. at pp. 28, 686.  It is clear that the ALJ did not find Plaintiff's symptoms were as limiting as alleged.  Nevertheless, she did choose to credit

20

Plaintiff's reports to some extent and found that her symptoms could be accounted for with a limitation to light work, with additional exertional limitations. The findings of Dr. Jenouri, whose opinion the ALJ found persuasive, would provide substantial evidence for a conclusion that Plaintiff could perform light work with no physical restrictions. *See Sarah S. v. Kijakazi*, 2022 WL 913095, at *4 (N.D.N.Y. Mar. 29, 2022). Here, however, the ALJ credited Plaintiff's symptoms and incorporated greater restrictions. "Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Catalfamo v. Berryhill*, 2019 WL 1128838, at *2 (W.D.N.Y. Mar. 12, 2019) (internal quotation omitted) (citing cases); *see also Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, at *13 (N.D.N.Y. Mar. 30, 2021) (citing cases).

### C. The ALJ's Step 5 Determination

Plaintiff asserts that the ALJ did not properly sustain her burden at Step 5, because the hypothetical posed to the VE failed to take into account all of her limitations. Pl.'s Mem. of Law at p. 23. "A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Andrea N. v. Saul*, 2020 WL 1140512, at *9 (N.D.N.Y. Mar. 9, 2020) (quoting *Pardee v. Astrue*, 631 F. Supp.

2d at 211)).  The Court concludes that the ALJ's finding that Plaintiff is capable of performing a significant number of jobs in the national economy is supported by substantial evidence.  As discussed in more detail above, the ALJ properly determined Plaintiff's RFC, and substantial evidence in the record supports that finding.  Because the ALJ posed a hypothetical to the vocational expert based on that RFC, and the jobs that the vocational expert identified are all compatible with the limitations set forth in the RFC, the Court finds that the Step 5 determination is similarly supported by substantial evidence.

### D. Refusal of the Appeals Council to Hear New Evidence

Plaintiff claims that the Appeals Council erred by refusing to consider new evidence submitted.  Pl.'s Mem. of Law at pp. 23-24.  More specifically, Plaintiff refers to the medical opinion provided by nurse practitioner Veronica Williamson, which was submitted by Plaintiff's counsel on February 25, 2020. Tr. at pp. 9-11, Pl.'s Mem. of Law at pp. 23-24.

According to 20 C.F.R. § 404.970, "[t]he Appeals Council shall consider evidence submitted after the ALJ's decision if the petitioner can show 'good cause' for not submitting the evidence to the ALJ and that the additional evidence is 'new, material, and relates to the period on or before the date of the hearing decision.'"  *Tricarico v. Colvin*, 681 F. App'x 98, 102 (2d Cir. 2017) (summary order) (citing 20 C.F.R. § 404.970(a)(5), (b)).  The Appeals Council here declined to consider the new evidence based upon Plaintiff's failure to demonstrate good cause for failing to inform the Council

22

about the evidence or to submit the evidence earlier.  Tr. at p. 2.  Good cause can be shown by "unusual, unexpected, or unavoidable" circumstances beyond a plaintiff's control.  20 C.F.R. § 404.970(b).  The Appeals Council provides the following examples of such circumstances that might establish good cause:

> (1) Our action misled you;
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
>> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>> (ii) There was a death or serious illness in your immediate family;
>> (iii) Important records were destroyed or damaged by fire or other accidental cause;
>> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or
>> (v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. § 404.970(b).

Plaintiff has alleged that she made efforts to obtain the medical opinion earlier and was unable to do so.  Pl.'s Mem. of Law at pp. 23-24, Tr. at pp. 490-491.  However, it is ultimately unnecessary for this Court to decide whether the Appeals Council erred in its conclusion that Plaintiff did not demonstrate good cause for failing to produce the evidence earlier.  This is because even if a court determines that the Appeals Council

23

erred by rejecting new and material evidence, "remand is only appropriate where there is a 'reasonable possibility' that this evidence would have influenced the ALJ to decide the disability determination differently." *Tricarico v. Colvin*, 681 F. App'x at 102 (citing *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991)).

"New evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative.'" *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (quoting *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988)).   "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id.*

The Court is unable to conclude that NP Williamson's opinion creates "a reasonable possibility" that the new evidence would have prompted the Commissioner to decide Plaintiff's disability claim differently.  The opinion was dated February 17, 2020, although NP Williamson indicated that the answers covered the time period from May 6, 2019 to September 12, 2019 only.  Tr. at p. 11.  NP Williamson stated that she "only started seeing [Plaintiff] in the last 8 months as a second opinion."  Tr. at p. 10. It appears that the basis for NP Williamson's opinion was substantially derived from the records of other providers, rather than from her own observations of Plaintiff.  For example, treatment notes from May 2019 indicated that NP Williamson "[w]ill need to review old records from Binghamton, EGD, Colonoscopy, Gastric Emptying Study, US, and most recent note from GI."  Tr. at p. 693.  Similarly, the opinion states that Plaintiff's

24

"complete GI work up was performed in the Binghamton area. Records indicate IBS, has had normal EGD, colonoscopy & GES in the past. Last seen 5 months ago, at that time diarrhea controlled [without] medication." Tr. at p. 10. She went on to state that the "frequency of and urgency of bowel movements is a common symptom of IBS." Tr. at p. 10. Although NP Williamson's opinion stated that Plaintiff's symptoms would result in both a significant amount of time off task and number of absences, she did not provide any evidentiary support for this opinion, nor did she indicate that it was based upon her own personal knowledge of Plaintiff's condition. Instead, she stated that Plaintiff's "[r]ecords indicate IBS." Tr. at p. 10. At the time she wrote the opinion, she had not seen Plaintiff in five months, and indicated that at her last appointment, Plaintiff's symptoms had been well-controlled without the use of medication. Tr. at p. 10. Accordingly, this court cannot conclude that NP Williamson's more recent opinion creates "a reasonable possibility" that the new evidence would have prompted the Commissioner to decide Plaintiff's disability claim differently. *See Guerra v. Saul*, 778 F. App'x 75, 77-78 (2d Cir. 2019) (summary order) ("The concept of materiality requires ... a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently."); *see also Amanda L.C. v. Comm'r of Soc. Sec.*, 2020 WL 4783169, at *6 (N.D.N.Y. August 18, 2020).

### E. The ALJ's Refusal to Allow Witness Testimony

Plaintiff claims that the ALJ erred by refusing to allow her husband to testify about the symptoms of her IBS, specifically regarding the frequency and duration of

bathroom trips.  Pl.'s Mem. of Law at pp. 24-25.  According to the hearing transcript, the ALJ declined to allow this testimony because Plaintiff was able to "tell her own story" and so the testimony would be unnecessarily duplicative.  Tr. at pp. 20, 378-379, 397-398.

"The general rule in Social Security proceedings is that the presentation and questioning of witnesses is permissible, not requisite."  *Krystal R. v. Comm'r of Soc. Sec.*, 2021 WL 3287776, at *5 (N.D.N.Y. Aug. 2, 2021) (internal alteration and quotation marks omitted).  However, "[t]here are circumstances when an ALJ's duty to develop the record requires questioning witnesses."  *Id.* (citing *Lopez v. Sec'y of Health & Human Servs.*, 728 F.2d 148, 150-51 (2d Cir. 1984)).  Witness testimony might be necessary for a full and fair development of the record where, for example, a claimant speaks little English, or where a claimant suffers memory issues that make it difficult to provide a detailed medical history.  *Id.* (collecting cases).  Plaintiff here has not alleged such a unique burden that might necessitate the use of witness testimony.  Plaintiff has a GED, Tr. at p. 380, and there is no evidence of significant language or learning disabilities.  Moreover, the hearing transcripts document Plaintiff's recitation of her own symptoms and treatment history.  Plaintiff testified in detail about the symptoms of her IBS and the frequency of her bathroom use in response to the ALJ's questioning.  Tr. at pp. 398-403.  Plaintiff states that her husband "would have testified as to the frequency and duration of bathroom usage."  Pl.'s Mem. of Law at p. 25.  She indicates that the evidence "would have been first-hand testimony concerning the frequency and duration

26

of bathroom breaks which would substantiate the amount of time Plaintiff would be off-task and/or absent due to bathroom usage related to her IBS." *Id.* Plaintiff testified that on an average day, she generally goes to the bathroom three to four times, and that the bathroom trips might take ten to fifteen minutes. Tr. at pp. 402-403. She reported symptoms of diarrhea that sometimes resulted in "accidents" once a month. Tr. at p. 403.

Based on this record, Plaintiff has failed to establish any prejudice resulting from the ALJ's decision to bar her husband's testimony. She has not demonstrated that such testimony would not have been cumulative of her own extensive recitation of her symptoms in response to the ALJ's questioning. The ALJ expressly considered Plaintiff's complaints of frequent diarrhea and abdominal pain but noted that treatment recommended by her gastroenterologist was conservative and included the use of medications, a probiotic, and diet changes. Tr. at pp. 28-29, 693-694, 715. The record also showed that as of September 2019, Plaintiff's diarrhea was well controlled with medication. Tr. at p. 700. The ALJ specifically discussed these symptoms and indicated that they could be accounted for by the limitations contained within the RFC. Tr. at pp. 28-29. As a result, the refusal to consider her husband's testimony does not provide a basis for remand.

### IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.


Dated: September 8, 2022
       Albany, New York



Daniel J. Stewart
U.S. Magistrate Judge